```
_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED
```

The Honorable Richard A. Jones

MAR 09 2016

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN BRENT WULF,<br><br>Defendant. | NO. CR15-332 RAJ<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Matthew P. Hampton, Assistant United States Attorney for said District, JONATHAN BRENT WULF and his attorney, Kyana Givens, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

1. **The Charge(s).** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters pleas of guilty to the following charges contained in the Superseding Information.

   a. Attempted Travel to Engage in Illicit Sexual Conduct With a Minor, as charged in Count 1, in violation of Title 18, United States Code, Section 2423(c), (e).

   b. Attempted Receipt of Child Pornography, as charged in Count 2, in violation of Title 18, United States Code, Section 2252(a)(2)

PLEA AGREEMENT/WULF
Case No. 15-332RAJ - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2.     **Charging document.**  By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document.  Defendant further understands that before entering his pleas of guilty, he will be placed under oath.  Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3.     **Elements of the Offenses.**

The elements of the offense of Attempted Travel to Engage in Illicit Sexual Conduct With a Minor, as charged in Count 1, in violation of Title 18, United States Code, Section 2423(c), (e), are as follows:

<u>First</u>: The defendant is a citizen of the United States;

<u>Second</u>: The defendant attempted to travel in foreign commerce;

<u>Third</u>: The defendant's purpose in in doing so was to engage in illicit sexual conduct, to wit, a sexual act in violation of Title 18, United States Code, Section 2243(a), if committed within the special maritime and territorial jurisdiction of the United States.

The elements of the offense of Attempted Receipt of Child Pornography, as charged in Count 2, in violation of Title 18, United States Code, Section 2252(a)(2), are as follows:

<u>First</u>, the defendant knowingly attempted to receive a visual depiction in interstate commerce by any means, including a computer;

<u>Second</u>, the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct;

<u>Third</u>, such visual depiction was of a minor engaging in sexually explicit conduct;

<u>Fourth</u>, the defendant knew that such visual depiction was of sexually explicit conduct; and

<u>Fifth</u>, the defendant knew that at least one of the persons engaged in sexually explicit conduct in such visual depiction was a minor.

PLEA AGREEMENT/WULF
Case No. 15-332RAJ - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4. **The Penalties**.

Defendant understands that the statutory penalties applicable to Count 1, Attempted Travel to Engage in Illicit Sexual Conduct With a Minor, are: imprisonment for up to thirty (30) years, a fine of up to $250,000, a period of supervision following release from prison of between five (5) years and life, and a special assessment of $100. Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant understands that the statutory penalties applicable to Count 2, Attempted Receipt of Child Pornography, are: imprisonment for not less than five (5) nor more than twenty (20) years, a fine of up to $250,000, a period of supervision following release from prison of between five (5) years and life, and a special assessment of $100. Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant further understands that Counts 1 and 2 each carry a $5000 mandatory penalty assessment that must be paid unless the Court finds that Defendant is indigent.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictive conditions and requirements. Defendant further understands that if supervised release is imposed and he violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant's serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

PLEA AGREEMENT/WULF
Case No. 15-332RAJ - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant further understands that a consequence of pleading guilty may include the forfeiture of certain property either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

    a.    The right to plead not guilty and to persist in a plea of not guilty;

    b.    The right to a speedy and public trial before a jury of his peers;

    c.    The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

    d.    The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

    e.    The right to confront and cross-examine witnesses against Defendant at trial;

    f.    The right to compel or subpoena witnesses to appear on his behalf at trial;

    g.    The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

    h.    The right to appeal a finding of guilt or any pretrial rulings.

6. **Statement of Facts.** The parties agree on the following facts. Defendant admits he is guilty of the charged offenses. The facts in this section may be used to determine the applicable Guideline range pursuant to USSG § 1B1.2(a):

    a.    In September 2015, JONATHAN BRENT WULF, who was 61 and a citizen of the United States at the time, became involved in a conversation with another

PLEA AGREEMENT/WULF  
Case No. 15-332RAJ - 4

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

individual whom he believed was the step-father of a 12-year-old girl, "Krissy," living in British Columbia, Canada. In reality, this individual was a law enforcement agent working in an undercover capacity, hereafter the "UC." The UC initiated the contact with WULF, who had posted an ad on Craigslist seeking women for a sexual encounter.

  b. Over approximately two weeks, WULF and the UC (via email, telephone, and internet/text messaging) discussed arranging a meeting (or series of meetings) between WULF and "Krissy" during which he could teach her about sex. During their conversations, WULF stated:

> I hear these stories, and from both boys and girls, from when they were young, about their introduction to sex from someone older and how awesome it was and how it went on for years, and it was like, still the best experience they ever had.

  c. WULF offered suggestions to the UC about how he might groom "Krissy" for the proposed sexual encounter(s). On one occasion, for example, WULF suggested that the UC,

> "go for a drive, where you kind of have her captive" and after "let her get over the initial shock of talking about cocks and pussies and getting wet and masturbating, so she has time to relax and tell you if she makes herself cum and so on. If you can get her talking to you about really intimate things like that, then it would also make sense to tell her, that you have ideas about how to help her get the experience she wants, but do it safely. She'll really wonder what your ideas are."

  d. WULF also provided a vivid and graphic description of the sorts of things he might be able to teach "Krissy":

> I will be your trainer... We are ready to begin, because you are comfortable with me, and have agreed to let me be your guide to sexual pleasure...What follows might happen in one session, or over the course of many times together... I'd help her get comfortable being naked with us. Perhaps we would all get naked and look at each other's bodies. She can examine our cocks. She can touch them if she wants, see what they feel like. She may or may not touch you, you may or may not want her to do that. She can get used to touching my cock and feeling how it goes from limp to hard, and what it feels like to stroke it. Similarly, with my balls. Then we'd move to her own body. I'd have her show us how she likes to touch herself, and how she masturbates if that is what she is doing. If she's not masturbating yet, I'd help her learn how to touch herself and perhaps she would experience her first orgasm at her own hands. I'd have her touch her nipples and play with them, feel how they get hard. I'd ask where else she likes to touch herself... I would bring her to orgasm with my fingers while sucking her nipples

PLEA AGREEMENT/WULF  
Case No. 15-332RAJ - 5

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

or having her touch herself. Now I would give her some very intense oral attention, licking and sucking her clit and working fingers into her pussy at the same time. Hopefully she would cum again, even harder. At this point I would reintroduce her to my cock, and have her suck it til it is hard. I would not cum from her oral attention, I feel that experience should wait for later. My goal right now is to give her the experience of being fucked. I would have her get on top of me so she can control the intrusion of my cock into her tight pussy. She would slowly settle onto it, taking all the time she needs. Once she has taken it all in, I would help her begin to ride it. I would let her ride me as long as she wants... When she's ready, I'd have her lie on her back and fuck her with her legs over my shoulders. I'd tell her to touch herself, see if she can make herself cum while I'm fucking her. Then I'd move her to her hands and knees and begin fucking her from behind. She might cum, she might not, but she'd experience what it's like to get pounded hard from behind. After I've cum, I think I'd have her just lie there naked and talk about what it all was like, what was fun, what was new or unexpected. The next time we're together, we'd start the same way, having her talk about what she's been curios about, what she's fantasizing about. At some point, she'll talk about anal sex and I'll start to play with her ass, teaching her how important it is that a guy understand he has to prepare her ass and can't just plunge in like he can a wet pussy. We'd take our time. Eventually, from our repeated times together, I'd introduce her to the fun of some simple bondage with simple restraints, helping her learn how being used hard like an object can actually be very stimulating and fun. We'd probably watch some porn prior to moving to this level. What else would you want me to introduce her to? Big cocks? Big black cocks? Threesomes, bigger groups? Bukkake parties? How about sucking another woman's pussy? Over time, we can introduce her to things like public flashing, public sex, domination. Let me know if the end sections are over the top. That would be if this became a long-term kind of contact, where she wanted to continue this experience and wants things that not many 14 or 15 or even 25 yr old guys would know anything about.

e.  On a number of occasions, WULF also asked the UC to send photos of "Krissy," including sexually explicit photos. He even advised the UC on how he might get "Krissy" comfortable with producing these photos. In one such exchange, WULF stated,

I was thinking about your photo session. Let her know I asked for photos. Tell her you need to find a private time. Don't tell her about my specific requests yet. She might ask what to wear; if she doesn't ask, you can inquire. If she doesn't know, "Maybe you should start out wearing something sexy, something you might wear Tuesday?" Emphasize the words "start out." You could suggest a

PLEA AGREEMENT/WULF
Case No. 15-332RAJ - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

short skirt or yoga pants, and after you take some initial pics tell her to bend over; "I know he'll want to see your cute little butt. Then ask, "So what will you take off first? Why don't you do that now." Once she's down to her underwear, take more poses, including ones where she's lying down. That's the time to tell her about the explicit photos I requested. If she's down to panties and bra, and posing, she's likely ready to take them off. Along the way, tell her "He's going to love these." Another thought would be for her to be with you when you start sending me the photos. Although then she would know you're using Kik...might think about that. But she could help choose which pics, and I could text her how great she looks and how I'm looking forward to meeting her. I could ask her what questions or worries she has. We could suggest that this could be how we start out on Tuesday, wearing those same clothes or similar. That way she has an idea what to expect. If she gets into the photos, you could take pics of her in the shower, or in a bathtub. Or in a pose like this one – show the pic to her and ask if she'd get in that position. I'll get that photo to you.

       f.      WULF immediately followed that last communication by sending a photo showing a young looking woman sitting in a chair and holding her legs above her head, thereby exposing her vagina and anus to the camera. WULF did so knowingly in an attempt to receive a visual depiction of "Krissy" engaged in sexually explicit conduct over the Internet from the UC.

       g.      WULF also communicated directly with someone he thought was "Krissy" but was in fact the UC pretending to be "Krissy." During their conversation, WULF asked "Krissy" if she'd ever had an orgasm and discussed some of what might happen if the two met, including giving her a sensual massage and her first orgasm.

       h.      WULF repeatedly expressed to the UC his desire to keep their conversations and anything that took place between him and "Krissy" a secret. Indeed, he admonished the UC to delete emails and messages so that there would be no evidence of what they were discussing. At several points, the UC expressed concerns about the wisdom of going forward and offered WULF an opportunity to back out, but WULF declined and expressed his desire to move forward.

       i.      WULF and the UC discussed arranging a meeting between him and "Krissy," and WULF stated he would be willing to drive from his home in Seattle to Canada so that he could meet and have sex with "Krissy." In fact, WULF applied to renew his passport so that he would be able to travel across the border and have sexual contact with "Krissy" and but for his intervening arrest, would have traveled to Canada for this purpose once he obtained that renewal.

PLEA AGREEMENT/WULF
Case No. 15-332RAJ - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

j. Had WULF engaged in sexual contact with "Krissy" within the special maritime and territorial jurisdiction of the United States, that would constitute a violation of Title 18, United States Code, Section 2243(a).

k. Ultimately, WULF and the UC arranged a meeting at a Seattle hotel on September 22, 2015, where WULF would be able to meet and have sex with "Krissy." WULF arrived at the hotel that afternoon and upon entering the room, was greeted by an undercover agent, who told WULF "Krissy" was in the shower. The two exchanged pleasantries. WULF then asked the agent what "Krissy" would be wearing when she came out, and in response to a question for his preference, WULF said it would be nice if she came out wearing nothing. WULF also showed the agent the condoms, lubricant, and massage he had brought with him to use with "Krissy." Shortly after, agents entered the room and placed WULF under arrest.

l. Following his arrest, law enforcement obtained and executed several search warrants for WULF's home, office, and personal effects. Among other things, a review of digital devices seized from WULF showed that he had a large collection of surreptitious "upskirt" photos of unknown women that WULF had taken.

7. **United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

PLEA AGREEMENT/WULF
Case No. 15-332RAJ - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

     a.    The Court will determine applicable Defendant's Sentencing Guidelines range at the time of sentencing;

     b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

     c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

     d.    Defendant may not withdraw his guilty pleas solely because of the sentence imposed by the Court.

8. **Acceptance of Responsibility.** At sentencing, if the district court concludes Defendant qualifies for a downward adjustment acceptance for acceptance of responsibility pursuant to USSG § 3E1.1(a) and the defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the district court to decrease the total offense level by two (3) levels pursuant to USSG §§ 3E1.1(a) and (b).

9. **Sentencing Factors.** The parties agree that the following Sentencing Guidelines provisions apply to this case:

     a.    A base offense level of 32, pursuant to USSG § 2G2.1(a);

     b.    A two-level increase because the offense involved a minor between the age of 12-16 pursuant to USSG § 2G2.1(b)(1);

     c.    A two-level increase because the offense involved a computer pursuant to USSG § 2G2.1(b)(6)(ii);

     d.    A three-level reduction to defendant's offense level, provided defendant qualifies for an adjustment of acceptance of responsibility, pursuant to USSG § 3E1.1(a).

In exchange for Defendant's agreement to submit to a pre-sentence psycho-sexual evaluation [*as referenced in ¶ 12(a), which has been provided to*] ~~and to provide the results to~~ the government, the United States Probation

PLEA AGREEMENT/WULF
Case No. 15-332RAJ - 9

*KKG   JBW   MPH*

Office, and the Court for the purposes of determining the appropriate sentence and conditions of supervised release, the government will recommend a further reduction of three levels from the offense level.

The parties agree they are free to argue the application of any other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10. **Sentencing Recommendation.** Each party agrees to recommend a sentence of imprisonment that is within a range of no less than seventy-eight (78) months and no more than one hundred and eight (108) months, and each party is free to recommend whatever sentence it believes is appropriate within that range. The government may recommend up to a lifetime of supervised release. Defendant understands and acknowledges that this recommendation is not binding upon the Court. Defendant also understands and acknowledges that the Government remains free to recommend whatever it believes is appropriate with respect to other aspects of the sentence including the terms of supervised release.

11. **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

12. **Joint Agreements.** The parties jointly agree to the following:

   a. **Pre-Sentence Psycho-Sexual Assessment.** Defendant has submitted to a sex offender evaluation/psycho-sexual assessment pursuant to Title 18, United States Code, Section 3552(b) conducted by Dr. Mark B. Whitehill.

   b. **Waiver of Confidentiality.** Defendant waives any right to confidentiality and authorizes the above-described provider conducting the psycho-sexual evaluation (and any subsequent treatment) to supply a written report(s) to the United States Probation Office, defense counsel, and government counsel. Such report(s) may

PLEA AGREEMENT/WULF
Case No. 15-332RAJ - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

be considered by the Court in determining the appropriate sentence and conditions of supervised release.

      c.    **Polygraph Testing.** Defendant agrees to participate in polygraph testing at the direction of his probation officer and/or treatment staff to monitor his compliance with supervised release and treatment conditions.

      d.    **Conditional Use/Derivative Use Immunity.** As a condition of any pre-sentence or post-sentence evaluation or psycho-sexual assessment, or any court-mandated evaluation and treatment, Defendant will be required truthfully to reveal his entire sexual history, including the possibility of other sexual offenses. As a condition of polygraph testing during any pre-sentence or post-sentence evaluation, treatment or supervision by U.S. Probation, Defendant will be required to answer all questions truthfully. In recognition of the fact that full disclosure of defendant's sexual history and truthful answers to any polygraph testing are necessary components of effective evaluation and treatment, the government agrees that Defendant's admissions during any court-ordered psycho-sexual evaluation and/or sex offender treatment of sexual crimes (excluding homicide) previously undisclosed to any law enforcement entity and any admissions during any polygraph testing of sexual crimes (excluding homicide) will not be used directly or indirectly against Defendant in a new criminal prosecution by the United States Attorney's Office for this District. The government further agrees that it will recommend that this use immunity be adopted by any other United States Attorney's Office, any other office or agency of the United States, and any state or local prosecuting office contemplating the future investigation or prosecution of Defendant. However, the parties acknowledge and agree that this use immunity and derivative use immunity is expressly conditioned upon: (1) Defendant successfully completing sexual deviancy treatment, and (2) Defendant not materially violating the rules of supervised release by committing a sexual crime or a crime involving or relating to the sexual exploitation of children after the date of this agreement. If Defendant fails to satisfy one or both of the

PLEA AGREEMENT/WULF
Case No. 15-332RAJ - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

above-described conditions, then the government may rescind this immunity agreement and may use defendant's previous statements directly and indirectly against him.

13. **Registration as a Sex Offender.** Defendant stipulates and agrees that based on the Sex Offender Registration and Notification Act, Title 42, United States Code, Section 16911 et seq., he is entering pleas of guilty to sex offenses and is a sex offender as those terms are defined in the Act. Defendant further agrees that pursuant to the Act, he is required to register as a sex offender, and keep the registration current, in each jurisdiction where Defendant resides, is an employee, and is a student. Defendant further agrees that for initial registration purposes only, Defendant is required also to register in the jurisdiction in which Defendant is convicted if such jurisdiction is different from the jurisdiction of residence.

14. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to the United States Attorney's Office for the Western District of Washington as of the time of this Agreement that are based upon evidence in the United States Attorney's Office for the Western District of Washington's possession at this time, and that arise out of the conduct giving rise to this investigation.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

15. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to

PLEA AGREEMENT/WULF
Case No. 15-332RAJ - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of his confinement, (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

16. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that by entering the guilty pleas required by this plea agreement, Defendant waives all rights to appeal from his conviction and any pretrial rulings of the court. Defendant further agrees that, provided the court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the court at the time of sentencing, Defendant waives to the full extent of the law:

a. Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the court, including any fine,

PLEA AGREEMENT/WULF
Case No. 15-332RAJ - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

b.   Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation; and

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding the execution of his sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

17.   **Voluntariness of Plea.**  Defendant agrees that he has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter his pleas of guilty.

18.   **Statute of Limitations.**  In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

19.   **Completeness of Agreement.**  The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties. This Agreement binds only the United States Attorney's Office for the Western District

PLEA AGREEMENT/WULF
Case No. 15-332RAJ - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any other state or local prosecutor.

Dated this 9 day of March, 2016.

*[signature]*
JONATHAN BRENT WULF
Defendant

*[signature]*
KYANA GIVENS
Attorney for Defendant

*[signature]*
MICHAEL DION
Assistant United States Attorney

*[signature]*
MATTHEW P. HAMPTON
Assistant United States Attorney

PLEA AGREEMENT/WULF
Case No. 15-332RAJ - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970